E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
STEVEN M. ARKOW (Cal. Bar No. 143755)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2432/6975
    Facsimile: (213) 894-6269
    E-mail:  ranee.katzenstein@usdoj.gov
           steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**9/27/2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CD _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>        v.<br><br>MARCO ANTONIO PEREZ,<br>  aka "Marc Perez,"<br><br>     Defendant. | No.  2:23-cr-00476-FLA<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MARCO ANTONIO PEREZ |

    1.   This constitutes the plea agreement between MARCO ANTONIO PEREZ, also known as "Marc Perez" ("defendant"), and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of insider trading involving shares of General Finance Corporation ("GFN").  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1                          DEFENDANT'S OBLIGATIONS

2        2.   Defendant agrees to:

3            a.   Give up the right to indictment by a grand jury and,

4   at the earliest opportunity requested by the USAO and provided by the

5   Court, appear and plead guilty to a single-count information in the

6   form attached to this agreement as Exhibit "A" or a substantially

7   similar form, which charges defendant with wire fraud, in violation

8   of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5: Securities Fraud

9   (Insider Trading).

10           b.   Not contest facts agreed to in this agreement.

11           c.   Abide by all agreements regarding sentencing contained

12  in this agreement.

13           d.   Appear for all court appearances, surrender as ordered

14  for service of sentence, obey all conditions of any bond, and obey

15  any other ongoing court order in this matter.

16           e.   Not commit any crime or any act constituting

17  obstruction of justice; however, offenses that would be excluded for

18  sentencing purposes under United States Sentencing Guidelines

19  ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the

20  scope of this agreement.

21           f.   Be truthful at all times with the United States

22  Probation and Pretrial Services Office and the Court.

23           g.   Pay the applicable special assessment at or before the

24  time of sentencing unless defendant has demonstrated a lack of

25  ability to pay such assessment.

26                          THE USAO'S OBLIGATIONS

27       3.   The USAO agrees to:

28           a.   Not contest facts agreed to in this agreement.

1          b.   Abide by all agreements regarding sentencing contained
2    in this agreement.

3          c.   At the time of sentencing, provided that defendant
4    demonstrates an acceptance of responsibility for the offense up to
5    and including the time of sentencing, recommend a two-level reduction
6    in the applicable Sentencing Guidelines offense level, pursuant to
7    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
8    additional one-level reduction if available under that section.

9          d.   Recommend that defendant be sentenced to a term of
10   imprisonment no higher than the low end of the applicable Sentencing
11   Guidelines range.  For purposes of this agreement, the low end of the
12   Sentencing Guidelines range is that defined by the Sentencing Table
13   in U.S.S.G. Chapter 5, Part A, without regard to reductions in the
14   term of imprisonment that may be permissible through the substitution
15   of community confinement or home detention as a result of the offense
16   level falling within Zone B or Zone C of the Sentencing Table.

17         e.   Except for criminal tax violations (including
18   conspiracy to commit such violations chargeable under 18 U.S.C.
19   § 371), not further criminally prosecute defendant for violations of
20   Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17,
21   Code of Federal Regulations, Section 240.10b-5, or for violations of
22   Title 18, United States Code, Section 1348, arising out of the facts
23   set forth in the agreed-to factual basis below as well as defendant's
24   trades in securities of GFN in February through April 15, 2021.
25   Defendant understands that the USAO is free to criminally prosecute
26   defendant for any other unlawful past conduct or any unlawful conduct
27   that occurs after the date of this agreement.  Defendant agrees that
28   at the time of sentencing the Court may consider the uncharged

3

1    conduct in determining the applicable Sentencing Guidelines range,

2    the propriety and extent of any departure from that range, and the

3    sentence to be imposed after consideration of the Sentencing

4    Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

5                        NATURE OF THE OFFENSE

6         4.   Defendant understands that for defendant to be guilty of

7    the crime charged in the sole count of the information, that is,

8    insider trading, in violation of Title 15, United States Code,

9    Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations,

10   Section 240.10b-5, the following must be true: (1) defendant

11   willfully used a device or scheme to defraud someone; (2) defendant's

12   acts were undertaken in connection with the purchase or sale of

13   shares of GFN, which were securities within the meaning of 15 U.S.C.

14   § 78c(a)(10); (3) defendant directly or indirectly used a national

15   securities exchange in connection with these acts; and (4) defendant

16   acted knowingly.  "Willfully" means intentionally undertaking an act

17   for the wrongful purpose of defrauding or deceiving someone.  Acting

18   willfully does not require that defendant know that the conduct was

19   unlawful.  An act is done "knowingly" if defendant is aware of the

20   act and did not act through ignorance, mistake, or accident.  The

21   government is not required to prove that defendant knew that his acts

22   were unlawful.

23                             PENALTIES

24        5.   Defendant understands that the statutory maximum sentence

25   that the Court can impose for a violation of Title 15, United States

26   Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal

27   Regulations, Section 240.10b-5, is: 20 years' imprisonment; a three-

28   year period of supervised release; a fine of $5,000,000 or twice the

4

1    gross gain or gross loss resulting from the offense, whichever is

2    greatest; and a mandatory special assessment of $100.

3        6.   Defendant understands that supervised release is a period

4    of time following imprisonment during which defendant will be subject

5    to various restrictions and requirements.  Defendant understands that

6    if defendant violates one or more of the conditions of any supervised

7    release imposed, defendant may be returned to prison for all or part

8    of the term of supervised release authorized by statute for the

9    offense that resulted in the term of supervised release, which could

10   result in defendant serving a total term of imprisonment greater than

11   the statutory maximum stated above.

12       7.   Defendant understands that, by pleading guilty, defendant

13   may be giving up valuable government benefits and valuable civic

14   rights, such as the right to vote, the right to possess a firearm,

15   the right to hold office, and the right to serve on a jury.

16   Defendant understands that once the Court accepts defendant's guilty

17   plea, it will be a federal felony for defendant to possess a firearm

18   or ammunition.  Defendant understands that the conviction in this

19   case may also subject defendant to various other collateral

20   consequences, including but not limited to revocation of probation,

21   parole, or supervised release in another case and suspension or

22   revocation of a professional license.  Defendant understands that

23   unanticipated collateral consequences will not serve as grounds to

24   withdraw defendant's guilty plea.

25       8.   Defendant and his counsel have discussed the fact that, and

26   defendant understands that, if defendant is not a United States

27   citizen, the conviction in this case makes it practically inevitable

28   and a virtual certainty that defendant will be removed or deported

1  from the United States.  Defendant may also be denied United States

2  citizenship and admission to the United States in the future.

3  Defendant understands that while there may be arguments that

4  defendant can raise in immigration proceedings to avoid or delay

5  removal, removal is presumptively mandatory and a virtual certainty

6  in this case.  Defendant further understands that removal and

7  immigration consequences are the subject of a separate proceeding and

8  that no one, including his attorney or the Court, can predict to an

9  absolute certainty the effect of his conviction on his immigration

10  status.  Defendant nevertheless affirms that he wants to plead guilty

11  regardless of any immigration consequences that his plea may entail,

12  even if the consequence is automatic removal from the United States.

13                              FACTUAL BASIS

14      9.   Defendant admits that defendant is, in fact, guilty of the

15  offense to which defendant is agreeing to plead guilty.  Defendant

16  and the USAO agree to the statement of facts attached as Exhibit "B"

17  and agree that this statement of facts is sufficient to support a

18  plea of guilty to the charge described in this agreement and to

19  establish the Sentencing Guidelines factors set forth in paragraph 11

20  below but is not meant to be a complete recitation of all facts

21  relevant to the underlying criminal conduct or all facts known to

22  either party that relate to that conduct.

23                           SENTENCING FACTORS

24      10.  Defendant understands that in determining defendant's

25  sentence the Court is required to calculate the applicable Sentencing

26  Guidelines range and to consider that range, possible departures

27  under the Sentencing Guidelines, and the other sentencing factors set

28  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

1 Sentencing Guidelines are advisory only, that defendant cannot have

2 any expectation of receiving a sentence within the calculated

3 Sentencing Guidelines range, and that after considering the

4 Sentencing Guidelines and the other § 3553(a) factors, the Court will

5 be free to exercise its discretion to impose any sentence it finds

6 appropriate up to the maximum set by statute for the crime of

7 conviction.

8      11.   Defendant and the USAO agree to the following applicable

9 Sentencing Guidelines factors:

10     Base Offense Level:              8         [U.S.S.G. § 2B1.4(a)]

11     Specific Offense              +12         [U.S.S.G. § 2B1.4(b)(1);
       Characteristic: Gain Between              U.S.S.G. § 2B1.1(b)(1)(H)]
12     $550,000 and $1,500,000
       (approximately $650,000)

13

14     The USAO will agree to a two-level downward adjustment for

acceptance of responsibility (and, if applicable, move for an

15 additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

16 only if the conditions set forth in paragraph 4(c) are met and if

17 defendant has not committed, and refrains from committing, acts

18 constituting obstruction of justice within the meaning of U.S.S.G.

19 § 3C1.1, as discussed below.  Subject to this paragraph, and subject

20 to paragraph 24 below, defendant and the USAO agree not to seek,

21 argue, or suggest in any way, either orally or in writing, that any

22 other specific offense characteristics, adjustments, or departures

23 relating to the offense level be imposed.  Defendant agrees, however,

24 that if, after signing this agreement but prior to sentencing,

25 defendant were to commit an act, or the USAO were to discover a

26 previously undiscovered act committed by defendant prior to signing

27 this agreement, which act, in the judgment of the USAO, constituted

28

1   obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the

2   USAO would be free to seek the enhancement set forth in that section

3   and to argue that defendant is not entitled to a downward adjustment

4   for acceptance of responsibility under U.S.S.G. § 3E1.1.

5      12.  Defendant understands that there is no agreement as to

6   defendant's criminal history or criminal history category.

7      13.  Defendant and the USAO reserve the right to make additional

8   arguments for a sentence outside the sentencing range established by

9   the Sentencing Guidelines based on the factors set forth in 18 U.S.C.

10   § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

11 WAIVER OF CONSTITUTIONAL RIGHTS

12      14.  Defendant understands that by pleading guilty, defendant

13   gives up the following rights:

14         a.   The right to persist in a plea of not guilty.

15         b.   The right to a speedy and public trial by jury.

16         c.   The right to be represented by counsel -- and if

17   necessary have the Court appoint counsel -- at trial.  Defendant

18   understands, however, that, defendant retains the right to be

19   represented by counsel -- and if necessary have the Court appoint

20   counsel -- at every other stage of the proceeding.

21         d.   The right to be presumed innocent and to have the

22   burden of proof placed on the government to prove defendant guilty

23   beyond a reasonable doubt.

24         e.   The right to confront and cross-examine witnesses

25   against defendant.

26         f.   The right to testify and to present evidence in

27   opposition to the charges, including the right to compel the

28   attendance of witnesses to testify.

8

1          g.    The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4          h.    Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7                    WAIVER OF APPEAL OF CONVICTION

8      15.  Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty plea was involuntary, by

10  pleading guilty defendant is waiving and giving up any right to

11  appeal defendant's conviction on the offense to which defendant is

12  pleading guilty.  Defendant understands that this waiver includes,

13  but is not limited to, arguments that the statute to which defendant

14  is pleading guilty is unconstitutional, and any and all claims that

15  the statement of facts provided herein is insufficient to support

16  defendant's plea of guilty.

17    WAIVER OF APPEAL OF SENTENCE AND WAIVER OF COLLATERAL ATTACK

18      16.  Defendant agrees that, provided the Court imposes a total

19  term of imprisonment based on an offense level of no more than 17

20  levels, defendant gives up the right to appeal all of the following:

21  (a) the procedures and calculations used to determine and impose any

22  portion of the sentence; (b) the term of imprisonment imposed by the

23  Court, including, to the extent permitted by law, the

24  constitutionality or legality of defendant's sentence, provided it is

25  within the statutory maximum; (c) the fine imposed by the Court,

26  provided it is within the statutory maximum; (d) the term of

27  probation or supervised release imposed by the Court, provided it is

28  within the statutory maximum; and (e) any of the following conditions

                                    9

1  of probation or supervised release imposed by the Court: the
2  conditions set forth in Second Amended General Order 20-04 of this
3  Court; the drug testing conditions mandated by 18 U.S.C.
4  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
5  authorized by 18 U.S.C. § 3563(b)(7).
6      17.  Defendant also gives up any right to bring a post-
7  conviction collateral attack on the conviction or sentence, except a
8  post-conviction collateral attack based on a claim of ineffective
9  assistance of counsel, a claim of newly discovered evidence, or an
10 explicitly retroactive change in the applicable Sentencing
11 Guidelines, sentencing statutes, or statutes of conviction.
12 Defendant understands that this waiver includes, but is not limited
13 to, arguments that the statutes to which defendant is pleading guilty
14 is unconstitutional, and any and all claims that the statement of
15 facts provided herein is insufficient to support defendant's plea of
16 guilty.
17     18.  The USAO agrees that, provided all portions of the sentence
18 are at or below the statutory maximum specified above, the USAO gives
19 up its right to appeal any portion of the sentence.
20              RESULT OF WITHDRAWAL OF GUILTY PLEA
21     19.  Defendant agrees that if, after entering a guilty plea
22 pursuant to this agreement, defendant seeks to withdraw and succeeds
23 in withdrawing defendant's guilty plea on any basis other than a
24 claim and finding that entry into this plea agreement was
25 involuntary, then the USAO will be relieved of all of its obligations
26 under this agreement.
27              EFFECTIVE DATE OF AGREEMENT
28     20.  This agreement is effective upon signature and execution of

1  all required certifications by defendant, defendant's counsel, and an

2  Assistant United States Attorney.

3  BREACH OF AGREEMENT

4  21. Defendant agrees that if defendant, at any time after the

5  effective date of this agreement, knowingly violates or fails to

6  perform any of defendant's obligations under this agreement ("a

7  breach"), the USAO may declare this agreement breached.  All of

8  defendant's obligations are material, a single breach of this

9  agreement is sufficient for the USAO to declare a breach, and

10 defendant shall not be deemed to have cured a breach without the

11 express agreement of the USAO in writing.  If the USAO declares this

12 agreement breached, and the Court finds such a breach to have

13 occurred, then: (a) if defendant has previously entered a guilty plea

14 pursuant to this agreement, defendant will not be able to withdraw

15 the guilty plea, and (b) the USAO will be relieved of all its

16 obligations under this agreement.

17 COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

18 OFFICE NOT PARTIES

19 22. Defendant understands that the Court and the United States

20 Probation and Pretrial Services Office are not parties to this

21 agreement and need not accept any of the USAO's sentencing

22 recommendations or the parties' agreements to facts or sentencing

23 factors.

24 23. Defendant understands that both defendant and the USAO are

25 free to: (a) supplement the facts by supplying relevant information

26 to the United States Probation and Pretrial Services Office and the

27 Court, (b) correct any and all factual misstatements relating to the

28 Court's Sentencing Guidelines calculations and determination of

11

1  sentence, and (c) argue on appeal and collateral review that the

2  Court's Sentencing Guidelines calculations and the sentence it

3  chooses to impose are not error, although each party agrees to

4  maintain its view that the calculations in paragraph 12 are

5  consistent with the facts of this case.  While this paragraph permits

6  both the USAO and defendant to submit full and complete factual

7  information to the United States Probation and Pretrial Services

8  Office and the Court, even if that factual information may be viewed

9  as inconsistent with the facts agreed to in this agreement, this

10  paragraph does not affect defendant's and the USAO's obligations not

11  to contest the facts agreed to in this agreement.

12      24.  Defendant understands that even if the Court ignores any

13  sentencing recommendation, finds facts or reaches conclusions

14  different from those agreed to, and/or imposes any sentence up to the

15  maximum established by statute, defendant cannot, for that reason,

16  withdraw defendant's guilty plea, and defendant will remain bound to

17  fulfill all defendant's obligations under this agreement.  Defendant

18  understands that no one -- not the prosecutor, defendant's attorney,

19  or the Court -- can make a binding prediction or promise regarding

20  the sentence defendant will receive, except that it will be within

21  the statutory maximum.

22              NO ADDITIONAL AGREEMENTS

23      25.  Defendant understands that, except as set forth herein,

24  there are no promises, understandings, or agreements between the USAO

25  and defendant or defendant's attorney, and that no additional

26  promise, understanding, or agreement may be entered into unless in a

27  writing signed by all parties or on the record in court.

28  //

1         <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2     26.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED
UNITED STATES ATTORNEY'S OFFICE
6 FOR THE CENTRAL DISTRICT OF CALIFORNIA

7 E. MARTIN ESTRADA
United States Attorney

9 _____     September 26, 2023
RANEE A. KATZENSTEIN             DATE
10 STEVEN M. ARKOW
Assistant United States Attorneys

12 _____     9,13-2023
13 MARCO ANTONIO PEREZ          DATE
Defendant

15 _____     9/13/2023
16 SCOTT D. TENLEY              DATE
Attorney for Defendant

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____         9.13.2023
MARCO ANTONIO PEREZ                      Date
Defendant

14

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MARCO ANTONIO PEREZ's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        9/13/2023
SCOTT D. TENLEY                         Date
Attorney for Defendant
MARCO ANTONIO PEREZ

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

MARCO ANTONIO PEREZ,
  aka "Marc Perez,"

       Defendant.

CR No.

I N F O R M A T I O N

[15 U.S.C. §§ 78j(b), 78ff; 17
C.F.R. § 240.10b-5: Securities
Fraud (Insider Trading)]

The United States Attorney charges:

[15 U.S.C. §§ 78j(b), 78ff;

17 C.F.R. § 240.10b-5; 18 U.S.C. § 2(b)]

I.   INTRODUCTORY ALLEGATIONS

   At times relevant to this Information:

      a.  General Finance Corporation

   1.  General Finance Corporation ("GFN") was a specialty rental services company that offered portable storage, modular space, liquid containment, and pod storage space, and was based in Pasadena, California.  Shares of GFN were publicly traded on the National Association of Securities Dealers Automated Quotations Stock Market ("NASDAQ"), a national securities exchange, under the symbol "GFN."

GFN was an issuer with securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act") and was required to file reports under Section 13 of the Exchange Act.

2.    GFN had an Insider Trading and Disclosure Policy (the "Insider Trading Policy"), with an effective date of June 19, 2014, that applied to employees of GFN and family trusts controlled by or benefitting individuals subject to the policy.

3.    The Insider Trading Policy prohibited GFN employees from trading in GFN stock while in possession of material nonpublic information.  The Insider Trading Policy defined material nonpublic information by stating the following: (a) "information should be regarded as material if it is likely that it would be considered important to an investor in making an investment decision regarding a purchase or sale of [GFN] Securities" and (b) "information about the [GFN] is considered to be 'nonpublic' if it is known within the company but not yet disclosed to the general public"; "information is considered 'public' only after it has been publicly available, through press release or otherwise, for at least twenty-four hours." The Insider Trading Policy also warned: "Don't give nonpublic information to others.  Don't give nonpublic information concerning [GFN] (referred to as "tipping"), to any other person, including family members, and don't make recommendations or express opinions about trading in [GFN] securities under any circumstances."

4.    GFN employees were routinely advised by GFN's General Counsel about insider trading laws and GFN's internal policies prohibiting GFN employees from trading in GFN stock while in possession of material nonpublic information.

///

1   **Defendant PEREZ**

2   5. Defendant MARCO ANTONIO PEREZ, also known as "Marc Perez,"

3 was a resident of Glendora, California.

4   6. Defendant PEREZ held securities investment brokerage

5 accounts at E*Trade, including: (a) an individual brokerage account

6 ending xx-2942; and (b) an Individual Retirement account ("IRA")

7 ending xx-6397.

8   7. Defendant PEREZ was the accountholder and user of the email

9 account Mperezxxxxxxxx@yahoo.com.

10   8. Beginning in or about July 2014, defendant PEREZ was

11 employed as an accounting manager at GFN and reported directly to the

12 chief financial officer ("CFO") at GFN.  Defendant PEREZ also

13 performed assignments for GFN's executive chairman of the board.

14   9. By virtue of defendant PEREZ's employment with GFN, job

15 responsibilities, and reporting relationship to GFN's executive

16 chairman of the board, defendant PEREZ had access to material

17 nonpublic information belonging to GFN, including information about

18 offers from other companies to acquire GFN, prior to such information

19 being released to the investing public.  As defendant PEREZ knew,

20 information about offers to acquire GFN, when known to the investing

21 public, would result in GFN's share price increasing.

22   10. As a corporate insider, defendant PEREZ owed a fiduciary

23 duty and duty of trust and confidence to GFN and its shareholders.

24   11. Defendant PEREZ signed GFN's Insider Trading and Disclosure

25 Policy Acknowledgement on or about June 27, 2014.  GFN's Insider

26 Trading Policy governed defendant PEREZ's trading in GFN's stock.

27   12. In addition, defendant PEREZ was routinely advised by GFN's

28 General Counsel about insider trading laws and internal policies

1  prohibiting GFN employees from trading in GFN stock while in
2  possession of material nonpublic information.

3          c.   United Rentals, Inc.

4      13.  United Rentals, Inc. ("URI") was the largest equipment
5  rental company in the world and was based in Stamford, Connecticut.
6  URI publicly traded on the New York Stock Exchange under the symbol
7  "URI."

8  II.  THE SCHEME TO DEFRAUD

9          a.   Defendant PEREZ Obtains Inside Information about the
10             Acquisition of GFN

11     14.  Between in or about February 2021, and on or about April
12  15, 2021, defendant PEREZ learned, by virtue of his role as
13  accounting manager at GFN, job responsibilities, and reporting
14  relationship to the CFO and the executive chairman of the board at
15  GFN, including through receiving confidential emails and attachments
16  to those emails forwarded to defendant's email address
17  Mperezxxxxxxxx@yahoo.com, that GFN was in the process of being
18  acquired, which was nonpublic information that a reasonable investor
19  would find to be material to the decision whether or not to trade in
20  GFN securities.  For example:

21          a.   On or about February 16, 2021, after GFN's executive
22  chairman of the board received, via email, a non-binding offer from
23  Company A to buy a wholly owned subsidiary of GFN, GFN's executive
24  chairman forwarded that email attaching the offer to defendant PEREZ.

25
26
27
28

b.   On or about February 22, 2021, after GFN's executive chairman of the board received, via email, a proposal from Company B to acquire GFN for a purchase price of $17.00 per share, GFN's executive chairman forwarded that email attaching the letter concerning the potential acquisition of GFN to defendant PEREZ.

c.   On or about March 3, 2021, after GFN's executive chairman of the board received, via email, a letter of interest from URI presenting a proposal to acquire GFN, valuing GFN "in the range of $19-20 per share," GFN's executive chairman forwarded that email attaching the letter of interest to defendant PEREZ.  The letter of interest stated "[t]his proposal and its terms are confidential and must be treated as such."

15.  As accounting manager of GFN, defendant PEREZ had direct access to and regular conversations with GFN's CFO, who assigned defendant PEREZ the responsibility of assisting with the with gathering and verifying of financial information about GFN in connection with URI's acquisition of GFN.

16.  Defendant PEREZ knew that an impending acquisition of GFN would be important to investors and, when publicly announced, would materially increase GFN's share price.

b.   Defendant PEREZ's Securities Transactions on the Basis Of Material Nonpublic Information

17.  On or about March 2, 2021, defendant PEREZ bought 5,000 shares of GFN stock at an average share price of approximately $10.74 for a total purchase price of $53,693 in his individual brokerage account at E*Trade ending xx-2942.

18.   On or about March 3, 2021, defendant PEREZ bought 21,000 shares of GFN stock at an average share price of approximately $11.42 for a total purchase price of $239,968 in his individual brokerage account at E*Trade ending xx-2942.

19.   On or about March 3, 2021, defendant PEREZ bought 5,250 shares of GFN stock at an average share price of approximately $11.29 for a total purchase price of $59,275 in his IRA account at E*Trade ending xx-6397.

20.   On or about March 8, 2021, defendant PEREZ, on behalf of the Perez Family Trust, caused to be bought 9,035 shares of GFN stock at an average share price of approximately $11.80 for a total purchase price of $106,660 in an account at E*Trade ending xx-5876.

21.   On or about March 9, 2021, defendant PEREZ, on behalf of the Perez Family Trust, caused to be bought 20,000 shares of GFN stock at an average share price of $12.06 for a total purchase price of $241,201 in an account at E*Trade ending xx-5876.

22.   On or about March 23, 2021, defendant PEREZ, on behalf of the Perez Family Trust, caused to be bought 6,300 shares of GFN stock at an average share price of $11.66 for a total purchase price of $73,485 in an account at E*Trade ending xx-5876.

23.   On April 15, 2021, at the close of the market, GFN's stock price was $12.17 per share.

c.   Defendant PEREZ's Securities Transactions to Reap the Profits Made Possible by his Purchases of GFN Shared Based on Material Nonpublic Information

24.   On April 15, 2021, following the market's close, URI issued a press release publicly announcing for the first time that it would

6

acquire GFN at $19 per share in cash.  Based on GFN's public announcement of the acquisition, the share price for GFN increased to approximately $19 on April 16, 2021.

25.  On or about April 23, 2021, defendant PEREZ sold 26,000 shares of GFN stock from his individual account at E*Trade ending xx-2942 at an average share price of approximately $18.96 for a total sales price of $492,960, and a profit of approximately $199,299.

26.  On or about April 23, 2021, defendant PEREZ, on behalf of the Perez Family Trust, sold 35,335 shares of GFN stock from the account at E*Trade ending xx-5876 at an average share price of $18.97 for a total sales price of $670,305, and a profit of approximately $248,959.

27.  On or about April 26, 2021, defendant PEREZ sold 5,250 shares of GFN stock from his IRA account at E*Trade ending xx-6397 at an average share price of approximately $18.96 for a total sales price of $99,550, and a profit of approximately $40,275.

III. <u>EXECUTION OF THE SCHEME TO DEFRAUD</u>

28.  On or about March 3, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant PEREZ, directly and indirectly and together with others known and unknown to the United States Attorney, by the use of the means and instrumentalities of interstate commerce and the facilities of national securities exchanges, in connection with the purchase and sale of GFN securities, employed a device, scheme and artifice to defraud members of the investing public and engaged in acts, practices and a course of business that operated and would operate as a fraud and deceit upon a person, in that defendant PEREZ executed and willfully caused to be executed a securities transaction, namely,

the purchase of 21,000 GFN shares at an average price of
approximately $11.42 per share for a total price of approximately
$239,968, on the basis of material nonpublic information relating to
the transaction that he used in breach of a duty of trust and
confidence that he owed directly and indirectly to the issuer of
those securities, to the shareholders of the issuer, and to other
persons and entities that were the source of the material nonpublic
information.


                                    E. MARTIN ESTRADA
                                    United States Attorney


                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                    RANEE A. KATZENSTEIN
                                    Assistant United States Attorney
                                    Chief, Major Frauds Section

                                    STEVEN M. ARKOW
                                    Assistant United States Attorney
                                    Major Frauds Section

**EXHIBIT B**

**STATEMENT OF FACTS**

**IN SUPPORT OF PLEA AGREEMENT**

Defendant MARCO ANTONIO PEREZ, also known as "Marc Perez" ("defendant PEREZ") represents and admits that the following facts are true:

Background:

At times relevant to the charge in the Information:

*General Finance Corporation*

1.     General Finance Corporation ("GFN") was a specialty rental services company that offered portable storage, modular space, liquid containment, and pod storage space, and was based in Pasadena, California.  Shares of GFN were publicly traded on the National Association of Securities Dealers Automated Quotations Stock Market ("NASDAQ"), a national securities exchange, under the symbol "GFN." GFN was an issuer with securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act") and was required to file reports under Section 13 of the Exchange Act.

2.     GFN had an Insider Trading and Disclosure Policy (the "Insider Trading Policy"), with an effective date of June 19, 2014, that applied to employees of GFN and family trusts controlled by or benefitting individuals subject to the policy.

3.     The Insider Trading Policy prohibited GFN employees from trading in GFN stock while in possession of material nonpublic information.  The Insider Trading Policy stated:

> Don't trade while in possession of material nonpublic
>
> information.  From time to time [sic] you may come into

possession of material nonpublic information as a result of
your relationship with the Company.  You may not buy, sell
or trade Company Securities at any time while you possess
material nonpublic information concerning the Company.

4.   The Insider Trading Policy defined material nonpublic
information by stating the following: (a) "information should be
regarded as material if it is likely that it would be considered
important to an investor in making an investment decision regarding a
purchase or sale of [GFN] Securities" and (b) "information about the
[GFN] is considered to be 'nonpublic' if it is known within the
company but not yet disclosed to the general public"; "information is
considered 'public' only after it has been publicly available,
through press release or otherwise, for at least twenty-four hours."
The Insider Trading Policy also warned: "Don't give nonpublic
information to others.  Don't give nonpublic information concerning
[GFN] (referred to as "tipping"), to any other person, including
family members, and don't make recommendations or express opinions
about trading in [GFN] securities under any circumstances."

5.   GFN employees were routinely advised by GFN's General
Counsel about insider trading laws and GFN's internal policies
prohibiting GFN employees from trading in GFN stock while in
possession of material nonpublic information.

*Defendant PEREZ*

6.   Defendant PEREZ" was a resident of Glendora, California.

7.   Defendant PEREZ held securities investment brokerage
accounts at E*Trade, including: (a) an individual brokerage account
ending xx-2942; and (b) an Individual Retirement account ("IRA")
ending xx-6397.  Defendant PEREZ also had trading authority and

2

1  traded in a trust account at E*Trade ending xx-5876 held in the name

2  of (A. and P.) Perez Family Trust.

3      8.   Defendant PEREZ was the accountholder and user of the email

4  account Mperezxxxxxxxx@yahoo.com.

5      9.   Beginning in or about July 2014, defendant PEREZ was

6  employed as an accounting manager at GFN and reported directly to the

7  chief financial officer ("CFO") at GFN.  Defendant PEREZ also

8  performed assignments for GFN's executive chairman of the board.

9  Among other things, GFN's executive chairman often forwarded emails

10  that he had received to defendant PEREZ and asked defendant PEREZ to

11  print out the email and its attachments and deliver the printed-out

12  hard copies to him.

13     10.   Through his employment with GFN and his relationship to the

14  executive chairman of the board, defendant PEREZ had access to

15  material nonpublic information belonging to GFN, including

16  information about offers from other companies to acquire GFN, prior

17  to such information being released to the investing public.  As

18  defendant PEREZ knew, information about offers to acquire GFN, when

19  known to the investing public, would result in GFN's share price

20  increasing,

21     11.   As a corporate insider, defendant PEREZ owed a fiduciary

22  duty and duty of trust and confidence to GFN and its shareholders.

23     12.   Defendant PEREZ signed GFN's Insider Trading and Disclosure

24  Policy Acknowledgement on or about June 27, 2014.  GFN's Insider

25  Trading Policy governed defendant PEREZ's trading in GFN stock.

26  Defendant PEREZ also received periodic emails from GFN's General

27  Counsel regarding the insider trading policy and, pursuant to that

28

3

1  policy, black-out periods surrounding GFN's release of quarterly

2  earnings.

3      *United Rentals, Inc.*

4      13.  United Rentals, Inc. ("URI") was the largest equipment

5  rental company in the world and was based in Stamford, Connecticut.

6  URI publicly traded on the New York Stock Exchange under the symbol

7  "URI."

8      The Scheme to Defraud

9      14.  Between in or about February 2021, and on or about April

10  15, 2021, defendant PEREZ learned that GFN was in the process of

11  being acquired, which was nonpublic information that a reasonable

12  investor would find to be material to the decision whether or not to

13  trade in GFN securities.   Defendant PEREZ learned this information,

14  among other ways, by reading the confidential emails and attachments

15  to those emails that GFN's executive chairman of the board had

16  forwarded to defendant PEREZ's email address

17  Mperezxxxxxxxx@yahoo.com.  For example:

18          a.   On or about February 16, 2021, after GFN's executive

19  chairman of the board received, via email, a non-binding offer from

20  Company A to buy a wholly owned subsidiary of GFN, GFN's executive

21  chairman forwarded that email attaching the offer to defendant PEREZ.

22          b.   On or about February 22, 2021, after GFN's executive

23  chairman of the board received, via email, a proposal from Company B

24  to acquire GFN for a purchase price of $17.00 per share, GFN's

25  executive chairman forwarded that email attaching the letter

26  concerning the potential acquisition of GFN to defendant PEREZ.

27          c.   On or about March 3, 2021, after GFN's executive

28  chairman of the board received, via email, a letter of interest from

4

1  URI presenting a proposal to acquire GFN, valuing GFN "in the range
2  of $19-20 per share," GFN's executive chairman forwarded that email
3  attaching the letter of interest to defendant PEREZ.   The letter of
4  interest stated "[t]his proposal and its terms are confidential and
5  must be treated as such."

6      Defendant PEREZ's Securities Transactions on the Basis Of
7      Material Nonpublic Information

8      15.   On or about March 2, 2021, defendant PEREZ bought 5,000
9  shares of GFN stock at an average share price of approximately $10.74
10  for a total purchase price of $53,693 in his individual brokerage
11  account at E*Trade ending xx-2942.

12      16.   On or about March 3, 2021, defendant PEREZ bought 21,000
13  shares of GFN stock at an average share price of approximately $11.42
14  for a total purchase price of $239,968 in his individual brokerage
15  account at E*Trade ending xx-2942.

16      17.   On or about March 3, 2021, defendant PEREZ bought 5,250
17  shares of GFN stock at an average share price of approximately $11.29
18  for a total purchase price of $59,275 in his IRA account at E*Trade
19  ending xx-6397.

20      18.   On or about March 8, 2021, defendant PEREZ, on behalf of
21  the Perez Family Trust, bought 9,035 shares of GFN stock at an
22  average share price of approximately $11.80 for a total purchase
23  price of $106,660 in an account at E*Trade ending xx-5876.

24      19.   On or about March 9, 2021, defendant PEREZ, on behalf of
25  the Perez Family Trust, bought 20,000 shares of GFN stock at an
26  average share price of $12.06 for a total purchase price of $241,201
27  in an account at E*Trade ending xx-5876.

28

20.   On or about March 23, 2021, defendant PEREZ, on behalf of the Perez Family Trust, bought 6,300 shares of GFN stock at an average share price of $11.66 for a total purchase price of $73,485 in an account at E*Trade ending xx-5876.

21.   On April 15, 2021, at the close of the market, GFN's stock price was $12.17 per share.

Defendant PEREZ's Securities Transactions to Reap the Profits Made Possible by his Purchases of GFN Shared Based on Material Nonpublic Information

22.   On April 15, 2021, following the market's close, URI issued a press release publicly announcing for the first time that it would acquire GFN at $19 per share in cash.  Based on GFN's public announcement of the acquisition, the share price for GFN increased to approximately $19 on April 16, 2021.

23.   On or about April 23, 2021, defendant PEREZ sold 26,000 shares of GFN stock from his individual account at E*Trade ending xx-2942 at an average share price of approximately $18.96 for a total sales price of $492,960, and a profit of approximately $199,299.

24.   On or about April 23, 2021, defendant PEREZ, on behalf of the Perez Family Trust, sold 35,335 shares of GFN stock from the account at E*Trade ending xx-5876 at an average share price of $18.97 for a total sales price of $670,305, and a profit of approximately $248,959.

25.   On or about April 26, 2021, defendant PEREZ sold 5,250 shares of GFN stock from his IRA account at E*Trade ending xx-6397 at an average share price of approximately $18.96 for a total sales price of $99,550, and a profit of approximately $40,275.

6

1    26.   In sum, defendant PEREZ realized a total profit from his

2  trades in GFN stock in accounts that he controlled of approximately

3  $488,533.

4    Defendant PEREZ's Tips to Others

5    27.   Based on the material inside information that he possessed,

6  defendant PEREZ encouraged certain third parties ("Tippees") to

7  purchase GFN stock.

8       a.   Between March 29, 2021, and April 14, 2021, Tippee No.

9  1 purchased 17,567 shares of GFN stock at prices ranging from $11.42

10  per share to $12.20 per share.  On April 16, 2021, Tippee No. 1 sold

11  all of these shares for prices ranging from $18.90 per share to

12  $18.92 per share, for a total profit of $127,140.

13       b.   Between April 5, 2020, and April 6, 2021, Tippee No. 2

14  purchased 5,123 shares of GFN stock at prices ranging from $12.19 per

15  share to $12.21 per share.  On May 26, 2021, Tippee No. 2 sold all of

16  these shares for a price of $18.96 per share, for a total profit of

17  $34,867.

18                           * * *

19

20

21

22

23

24

25

26

27

28

1    I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT

2  in its entirety.  I have had enough time to review this statement of

3  facts and I have carefully and thoroughly discussed every part of it

4  with my attorney.  I agree that this statement of facts is sufficient

5  to support a plea of guilty to the charge described in the plea

6  agreement and to establish the Sentencing Guidelines factors set

7  forth in paragraph 11 of the plea agreement.

9  _____          9.13-2023
   MARCO ANTONIO PEREZ                   Date
   Defendant

11    I am Marco Antonio Perez's attorney.  I have carefully and

12  thoroughly discussed every part of this statement of facts with my

13  client and agree that it is sufficient to support a plea of guilty to

14  the charge described in the plea agreement and to establish the

15  Sentencing Guidelines factors set forth in paragraph 11 of the plea

16  agreement.

18  _____          09/13/2023
   SCOTT D. TENLEY                       Date
   Attorney for Defendant
19  MARCO ANTONIO PEREZ

8

## CERTIFICATE OF SERVICE

I, **Teresa H. Terrell,** declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT MARCO ANTONIO PEREZ; EXHIBITS A AND B (INFORMATION AND STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT)**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States certified mail, addressed as follows:

**Marco Antonio Perez**
**c/o Scott D. Tenley**
**315 W. 9th Street, Suite 1200**
**Los Angeles, CA 90015**

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ Via email, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **September 27, 2023,** at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Teresa H. Terrell*
Teresa H. Terrell
Legal Assistant